IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| CARL LAMONT HOWSE, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:19-cv-00027 |
| CANDACE HAMMOND, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Carl Lamont Howse, Jr., an inmate at the Turney Center Industrial Complex in Only, Tennessee, filed this pro se civil rights action under 42 U.S.C. § 1983 against Candace Hammond, Daniel Rumbaugh, Cert. Officer Peon, and Jason Clandanon. (Doc. No. 1.) Plaintiff also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 5) and a motion to appoint counsel (Doc. No. 2).

**I.    Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's in forma pauperis application that he cannot pay the full filing fee in advance, his application (Doc. No. 5) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

**II.   Initial Review**

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The

Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff alleges that Candace Hammond, Daniel Rumbaugh, and Officer Peon—all CERT Team Members—blindfolded and beat him while he was in restraints on the morning of January 24, 2019. (Doc. No. 1 at 10.) He alleges that Hammond and Rumbaugh repeatedly hit him in the ribs. (*Id.*) According to Plaintiff, Hammond also repeatedly hit him in the face while calling him a "piece of s*** a** n*****," and Officer Peon repeatedly kicked him in the penis while saying "this what we do to n*****s." (*Id.*) Plaintiff felt more punches and kicks but could not see who was hitting him due to the blindfold. (*Id.*) These three defendants slammed Plaintiff to the ground face first, removed his restraints, and threatened to beat him again if he moved. (*Id.* at 10–11.) They then left Plaintiff's cell. (*Id.* at 11.)

Plaintiff alleges that he reported this incident to Defendant Jason Clandanon six times, but Clandanon refused to report it or call medical care for Plaintiff. (*Id.* at 12.) Clandanon allegedly told Plaintiff that he was "just a nothing n***** that's a gangbanger." (*Id.*) Plaintiff requests monetary damages from all four defendants. (*Id.* at 11, 13.)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the

factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under [Section] 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

#### 1. Capacity of Defendants

As an initial matter, in the section of the complaint listing information about the defendants, Plaintiff circled the word "yes" next to the phrase "names in official capacity." (Doc. No. 1 at 8–10, 12.) But Plaintiff did not circle either "yes" or "no" next to the phrase "named in individual capacity." (*Id.*) Thus, Plaintiff affirmatively pleaded that the defendants are named in their official capacities, but not whether they are also named in their individual capacities.

The Sixth Circuit has explained that, "'[i]f a [Section] 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether' the defendants received sufficient notice that they might be held individually liable." *Goodwin v. Summit Cty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001)); *see also Rodgers v. Banks*, 344 F.3d 587, 594–95 (6th Cir. 2003) ("[A]

plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to the lawsuit."). In considering "the defendants' notice of their potential individual liability," the Court analyzes "factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint." *Goodwin*, 703 F. App'x at 382 (quoting *Moore*, 272 F.3d at 772 n.1).

Here, the caption of the complaint lists two defendants by name only, not their official titles. (Doc. No. 1 at 1.) The third defendant listed in the caption—"Cert. Officer Peon"—is identified by position seemingly because Plaintiff does not know his first name. (*Id.*) The fourth defendant is listed by name only, without reference to his official title, on a page added to the complaint. (*Id.* at 12.) Plaintiff also seeks compensatory damage from each individual defendant by name. (*Id.* at 11, 13.) These details support a finding that the complaint provides sufficient notice that the defendants are being sued as individuals. *See Moore*, 272 F.3d at 773. And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually, this doubt should be resolved in [Howse's] favor as a pro se plaintiff." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (citing *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)). Accordingly, the Court will consider Plaintiff's claims against the defendants in both their individual and official capacities. S*ee Rodgers*, 344 F.3d at 594–95 (applying the course-of-proceedings test to hold that a defendant explicitly sued in her official capacity "was on notice that she was [also] being sued in her individual capacity").

2. **Dismissal of Official-Capacity Claims**

Plaintiff's official-capacity claims are subject to dismissal. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here, as officers at

4

Turney Center Industrial Complex, all four defendants represent the Tennessee Department of Correction ("TDOC").[1] As relief, Plaintiff seeks only monetary damages, and the TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted). Plaintiff, therefore, fails to state a claim against all four defendants in their official capacities.

### 3. Eighth Amendment Claims

Plaintiff alleges that Defendants Hammond, Rumbaugh, and Peon blindfolded and beat him while he was in restraints. He also alleges that these three defendants slammed him to the ground face first before removing his restraints and leaving the cell.

Although Plaintiff does not state whether he is a pretrial detainee or a convicted prisoner, the Court takes judicial notice that Plaintiff is a convicted prisoner.[2] The Eighth Amendment protects post-conviction inmates from "cruel and unusual punishment," which includes the right to be free from excessive force by prison officials. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986)). A prisoner's Eighth Amendment claim for excessive force has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). For the objective component, a plaintiff must demonstrate that a prison official inflicted pain that was "sufficiently serious" based on "contemporary standards of decency." *Id.* at 580 (internal citations omitted). The subjective component requires the Court to

---

[1] The Court takes judicial notice that Turney Center is a TDOC facility. *See* Turney Center Industrial Complex, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/turney-center-industrial-complex (last visited Mar. 29, 2019).

[2] Plaintiff's prisoner identification number is listed on the complaint. (Doc. No. 1 at 1, 6, 14–15.) A search of the Tennessee Felony Offender Information database using this identification number reflects that an individual with the same name and identification number as Plaintiff is a convicted inmate housed at Turney Center. *See* Tennessee Felony Offender Information, https://apps.tn.gov/foil/ (last visited Mar. 29, 2019).

consider whether the alleged force applied by a prison official was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, taking Plaintiff's allegations as true, the Court concludes that Plaintiff states an excessive-force claim against Defendants Hammond, Rumbaugh, and Peon.

Plaintiff also alleges that he reported this incident to Clandanon six times, but Clandanon refused to call medical care for him. The Eighth Amendment imposes a duty on prison officials to provide convicted inmates adequate medical care. *Shadrick*, 805 F.3d at 736–37 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "For the failure to provide medical treatment to constitute a constitutional violation, [a plaintiff] must show that the defendant[] acted with 'deliberate indifference to serious medical needs.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle*, 429 U.S. at 104). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, Plaintiff does not provide any details about the injuries he sustained from the alleged beating. At this stage in the proceedings, however, the Court must construe the allegations in a light most favorable to Plaintiff. Thus, for the purpose of initial review, the Court infers that the alleged beating—a beating that entailed repeated hits to the ribs, face, and genitals, as well as

slamming Plaintiff to the ground face first—at least resulted in "pain and mental anguish" sufficiently serious to satisfy the objective component of this claim. *See Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (quoting *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991)) ("'[P]ain and mental anguish' endured is itself sufficient to constitute cruel and unusual punishment."). As to the subjective component, Plaintiff's six futile requests for treatment from Defendant Clandanon reflect that Clandanon was aware of Plaintiff's medical needs, but deliberately disregarded them. Accordingly, the Court concludes that Plaintiff states a claim against Defendant Clandanon for deliberate indifference to his serious medical needs.

Plaintiff also asserts a claim against Clandanon for failing to report the alleged beating to the Turney Center Warden, but he does not explain how this failure violated his constitutional rights. Plaintiff may, for instance, be attempting to assert a claim for failing to protect him from another beating by the same three defendants. And a prison official may be liable for failing to prevent another prison official from harming an inmate under the Eighth Amendment. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting Farmer, 511 U.S. at 832). But Plaintiff's allegations do not reflect that he was "incarcerated under conditions posing a substantial risk of serious harm" after the beating, as required to satisfy the objective component of this claim. *Id.* (quoting *Farmer*, 511 U.S. at 834). Thus, Plaintiff fails to state a claim based on this allegation.

### 4. Discrimination Claims

Finally, Plaintiff asserts a discrimination claim against all four defendants. (Doc. No. 1 at 11, 13.) He alleges that Defendants Hammond and Peon called him a racial slur during the beating by Hammond, Peon, and Rumbaugh, and that Peon repeatedly said "this what we do to n*****s." After the beating, Plaintiff alleges, Defendant Clandanon called him a racial slur while refusing to report the incident or call medical care for him.

7

The Equal Protection Clause of the Fourteenth Amendment "provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Katz v. Village of Beverly Hills*, 677 F. App'x 232, 237 (6th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1.) "To state a claim under the Equal Protection Clause, a [Section] 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Id.* (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).

Here, accepting Plaintiff's allegations as true, the complaint reflects that Defendants Hammond, Peon, and Rumbaugh's use of excessive force may have been racially motivated. Likewise, Plaintiff's allegations reflect that Defendant Clandanon may have refused to call Plaintiff medical care due to Plaintiff's race. To be sure, "[t]he occasional use of racial slurs, although unprofessional and reprehensible, does not rise to the level of constitutional magnitude." *Jones Bey v. Johnson*, 248 F. App'x 675, 677–78 (6th Cir. 2007) (citations and internal quotation marks omitted). In this case, however, Plaintiff alleges more than mere "[v]erbal harassment or idle threats." *Wingo*, 477 F. App'x at 455 (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). Liberally construing the complaint, Plaintiff alleges that the defendants actively engaged in unconstitutional conduct because of his membership in a protected class. The Court concludes that these allegations are sufficient to state a race-based discrimination claim against all four defendants at this point in the proceedings.

## III. Motion to Appoint Counsel

Plaintiff argues that appointment of counsel is warranted because he is indigent and incarcerated, has limited access to legal resources, and requires counsel to properly present his claims. (Doc. No. 2 at 1.) Because this is a civil action, however, appointment of counsel is not a

constitutional right, *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 604-06 (6th Cir. 1993)), and "is justified only in exceptional circumstances," *id.* (citing *Lavado*, 992 F.2d at 605–06). "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)).

At this early stage in the proceedings, Plaintiff has demonstrated that he can communicate effectively with the Court. Moreover, while Plaintiff's indigence and incarceration present significant barriers to him, they are circumstances common to many civil pro se prisoner-plaintiffs rather than circumstances that are "extraordinary." Accordingly, Plaintiff's motion to appoint counsel will be denied, without prejudice to Plaintiff's ability to raise the issue of appointed counsel again if his circumstances change.

**IV.  Conclusion**

For these reasons, Plaintiff's in forma pauperis application will be granted and his motion to appoint counsel will be denied without prejudice. Plaintiff's individual-capacity excessive-force claims against Defendants Hammond, Rumbaugh, and Cert. Officer Peon will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order, as will his individual-capacity claim against Defendant Clandanon for deliberate indifference to his serious medical needs. Plaintiff's race-based discrimination claim against all four defendants in their individual capacities will be referred to the Magistrate Judge as well.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE