IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CARL LAMONT HOWSE, JR.    )
               )
 v.             )  NO: 1:19-00027
               )
CANDACE HAMMOND, et al.    )

**TO:** Honorable William L. Campbell, Jr., District Judge

### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered April 4, 2019 (Docket Entry No. 8), the Court referred this prisoner civil rights action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court is the Motion for Summary Judgment filed by Defendants Jason Clendenion, Candace Hammond, and Brandon Peone (Docket Entry No. 16). Plaintiff has responded in opposition to the motion. *See* Docket Entry Nos. 19-20 and 25-26. For the reasons set out below, the undersigned Magistrate Judge respectfully recommends that the motion be granted and that this action be dismissed.

### I. BACKGROUND

Carl Lamont Howse, Jr. ("Plaintiff") is an inmate in the custody of the Tennessee Department of Correction ("TDOC") who is currently confined at the Morgan County Correctional Complex in

Wartburg, Tennessee. He filed this lawsuit *pro se* and *in forma pauperis* on February 25, 2019,[1] seeking damages under 42 U.S.C. § 1983 based upon events that occurred at the Turney Center Industrial Complex ("TCIX") in Only, Tennessee, where he was confined at the time the lawsuit was filed. Plaintiff brings several claims against four employees at the TCIX - Candace Hammond ("Hammond"), Jason Clendenion ("Clendenion"), Bradon Peone ("Peone"), and Daniel Rumbaugh ("Rumbaugh") - based on allegations that they violated his federal constitutional rights in early 2019.

Specifically, Plaintiff alleges that Hammond, Rumbaugh, and Peone came to his cell on January 24, 2019, and physically assaulted him by beating him and kicking him while he was in handcuffs. *See* Complaint at 10-11. He alleges that he was then blindfolded and that the attack continued, with his head being slammed onto the floor. *Id*. He alleges that his attackers used racial slurs during the attack, which he says lasted ten minutes, and left him locked in his cell afterward. *Id*. Plaintiff alleges that he reported the attack to Clendenion six times but that Clendenion refused to report the incident to the TCIX warden, refused to request medical help for Plaintiff, and also used racial slurs towards Plaintiff. *Id*. at 12.

Upon initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff asserted the following individual-capacity claims: (1) an Eighth Amendment excessive force claim against Defendants Hammond, Rumbaugh, and Peone; (2) an Eighth Amendment claim against Defendant Clendenion for deliberate indifference to Plaintiff's serious medical needs; and (3) a Fourteenth Amendment race-based discrimination claim against all Defendants. *See* April 4, 2019 Order at 2. Process was issued to Defendants. In lieu of an answer, Defendants Hammond,

---

[1] Although Plaintiff's complaint was received by the Clerk's Office and file stamped on February 25, 2019, it was signed and dated by him on February 4, 2019. *See* Complaint (Docket Entry No. 1) at 15.

Clendenion, and Peone (hereinafter referred to collectively as "Defendants") filed the pending motion for summary judgment. Defendant Rumbaugh has not responded to the complaint, and it is not clear from the record if he has been served with process.

## II. MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure. They support their motion with a Memorandum (Docket Entry No. 17), and with the affidavit of Bryce Coatney, the TDOC Director Of Legal Services, and documents attached thereto (Docket Entry No. 17-1). Defendants raise a single argument for summary judgment. They argue that Plaintiff did not exhaust his available administrative remedies at the TCIX prior to filing his lawsuit and that his claims are, thus, subject to dismissal under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, for failure to exhaust. Defendants specifically assert that prison grievance records do not show that Plaintiff filed a grievance about any of the incidents at issue in his lawsuit.

Plaintiff filed an initial response, contending that he attempted to pursue a grievance but was prevented from doing so by prison officials. *See* Response (Docket Entry No. 19). In an affidavit, he asserts that he gave a grievance to TCIX Officer Jacob Brumit ("Brumit") on January 27, 2019, and that Brumit put the grievance in the housing pod's grievance box but that TCIX staff member Brittany Norfleet ("Norfleet") checked the grievance box on February 5, 2019, and said that she was not going to process the grievance. *See* Affidavit (Docket Entry No. 20) at 1. Plaintiff asserts that other prison officials responded to his inquiries about the grievance by telling him that his grievance was not going to be heard because it was filed against other prison officials. *Id*. at 2. Attached to

3

Plaintiff's response is a "Two Way Message" form which is purportedly signed by Brumit and contains the statement, "I C/O Brumit did turn in your grievance on 1-17-2019." *See* Docket Entry No. 19 at 3. Because the affidavit filed by Plaintiff contained deficiencies that would not permit it be considered as competent evidence, the Court gave Plaintiff a deadline of July 1, 2019, to file a proper affidavit. *See* Order entered June 11, 2019 (Docket Entry No. 21).

In reply, Defendants argue that Plaintiff's response to the motion for summary judgment is not supported by any actual evidence and that Plaintiff did not file a proper affidavit as directed by the Court. *See* Reply (Docket Entry No. 22). Defendants also submit the affidavit of Norfleet, in which she attests that the only grievance she received from Plaintiff during the time frame at issue was a Title VI grievance submitted on February 5, 2019, but that the grievance had missing information and was returned to Plaintiff on the same day via in-house mail in order to be corrected and resubmitted. *See* Docket Entry No. 23 at ¶ 6. She attests that Plaintiff informed her the following day that he wanted to file a Title VI grievance on Stacy Oaks and "the prison CERT Team," but that he wanted to "wait on paperwork from his attorney" before moving forward with the grievance. *Id*. at ¶ 8. She attests that Plaintiff never returned a complete or corrected grievance and, thus, his grievance was not logged into his grievance record on TOMIS. *Id*. at ¶ 4.

Plaintiff thereafter made three filings with the Court: (1) a Motion for Miscellaneous Relief (Docket Entry No. 24); (2) a Motion to Stay (Docket Entry No. 25); and (3) a Notice (Docket Entry No. 26). The first motion does not address any of the issues raised by the summary judgment motion and appears to be a request by Plaintiff to amend his complaint to add TDOC Commissioner Tony Parker as a defendant.[2] In the second motion, Plaintiff addresses the issue of exhaustion, contending:

---

[2] By separate order, the undersigned has denied the motion.

(1) that Norfleet is lying in her affidavit and that he (Plaintiff) has provided evidence to show that he filed his grievance; (2) that Norfleet, by refusing to process his grievance, has acted to cover up Defendants' wrongful actions and to prevent Plaintiff's grievance from being heard; and, (3) that proceedings on his claims should be stayed in accordance with Tenn.Code.Ann. § 41-21-806(c)[3] until the prison grievance process is completed. To the extent that Plaintiff's second motion addresses the issue of exhaustion, that part of the motion is deemed to be a sur-response to the motion for summary judgment.[4] Plaintiff's third filing appears to be a request for discovery. Attached to the filing is an incident report completed by Defendant Rumbaugh about the events in Plaintiff's cell on January 24, 2019. *See* Docket Entry No. 26 at 3.

Defendants filed a comprehensive response to Plaintiff's three most recent filings, arguing that there is nothing contained in the filings that supports a conclusion that Plaintiff satisfied the PLRA's exhaustion requirement prior to filing his lawsuit. *See* Docket Entry No. 27.

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A "genuine issue of

---

[3] Tenn.Code.Ann. § 41-21-806(c) is contained within the Tennessee Act "Lawsuits By Inmates" and provides: "If a claim is filed before the grievance procedure is complete, the court shall stay the proceedings with respect to the claim for a period not to exceed ninety (90) days to permit completion of the grievance procedure."

[4] By separate order, the undersigned has denied the motion to the extent that Plaintiff seeks to amend his complaint to add Norfleet as a defendant.

5

material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the non-moving party must present significant probative evidence to support the complaint. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896 (2001).

## IV. CONCLUSIONS

Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, a prisoner bringing a lawsuit under 42 U.S.C. § 1983 with respect to prison conditions, including claims of excessive force, must exhaust all available administrative remedies before filing the lawsuit. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v.*

6

Case 1:19-cv-00027   Document 29   Filed 10/30/19   Page 6 of 12 PageID #: 166

*Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). Satisfying the exhaustion requirement is mandatory. *Ross v. Blake*, _U.S._, 136 S. Ct. 1850, 1856 (2016). Completing the grievance process while a lawsuit is pending does not satisfy the PLRA's exhaustion requirement. *See Fraley v. Ohio Dep't of Corr.*, 2018 WL 2979902 at *2 (6th Cir. Mar. 22, 2018); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense of failure to exhaust is raised and supported, the burden is on the prisoner plaintiff to present evidence showing that he has complied with the PLRA's requirement of exhaustion. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Defendants have offered evidence that: (1) a three level procedure exists for TDOC inmates that allows inmates to file grievances for issues relating to their conditions of confinement; (2) Plaintiff filed an initial grievance that was deficient and returned to him to be corrected; and, (3) Plaintiff failed to thereafter pursue his grievance about the matters at issue in his claims against Defendants. *See* Affidavit of Coatney at ¶¶ 4-12; TDOC Inmate Grievance Procedures Policy § 501.01 (Docket Entry No. 17-1 at 5-18); Affidavit of Norfleet at ¶¶ 5-10. In the face of Defendants' affirmative evidence of noncompliance with the exhaustion requirement, Plaintiff must present "significant probative evidence" showing compliance with the PLRA. *See Napier*, *supra*.

It is undisputed based on the record before the Court that Plaintiff did not complete the grievance process prior to filing his lawsuit. He fails to present any evidence that the completed the prison grievance process regarding his claims, and, by requesting in a recent filing that his claims

7

be stayed under state law while the grievance process is completed, he appears to concede that he did not fully exhaust a prison grievance concerning his claims.

With respect to his request for a stay of this litigation under Tenn.Code.Ann. 41-41-806(c), Plaintiff has provided no legal authority for a conclusion that this state provision applies to the PLRA's mandatory exhaustion requirement. While the Tennessee statutory provision would apply to a prisoner's lawsuit brought within the courts of Tennessee, even if the lawsuit sought redress for civil rights violations, it does not apply to lawsuits brought within the federal courts. For federal lawsuits, the PLRA's mandatory exhaustion requirement controls.

Thus, Plaintiff is left to argue that the instant lawsuit should not be dismissed for failure to exhaust because he attempted to file a prison grievance but was prevented from pursuing the grievance by the actions of prison officials who would not process his grievance. Although not stated as such, this argument raises the theory that the prison grievance process was not available to Plaintiff. In *Ross v. Blake*, the Supreme Court clarified that there are some factual scenarios under which an inmate's attempt to use the grievance process is so compromised that the administrative remedy is made effectively "unavailable" and, thus, an inmate's duty to exhaust available remedies does not come into play. *Ross*, 136 S.Ct. at 1859. However, these scenarios are limited, and an administrative remedy is not "available" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the "administrative scheme ... [is] so opaque that it becomes, practically speaking, incapable of use," or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

8

Plaintiff's reliance on a *Ross* exception is unpersuasive for two reasons. First, Plaintiff has not presented competent evidence supporting an exception to the PLRA's exhaustion requirement under *Ross*. As with many *pro se* litigants, Plaintiff's response to the motion for summary judgment consists primarily of unsworn statements and copies of documents which are unaccompanied by an affidavit or declaration that provides a foundation for the document. Generally, an unsworn statement cannot be considered as evidence rebutting the motion for summary judgment, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 969 (6th Cir. 1991), and documents submitted in opposition to a motion for summary judgment must be authenticated by being sworn to or certified to be considered by the Court. *See* Rule 56(e) of the Federal Rules of Civil Procedure; *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007); *Moore v. Holbrook*, 2 F.3d 697, 698-99 (6th Cir. 1993). Accordingly, neither the unsworn statement purportedly signed by Officer Brumit nor the deficient affidavit from Plaintiff are sufficient to raise genuine issues of material fact on the issue of exhaustion. For these reasons, Plaintiff has neither shown that prison officials refused to process his grievance nor rebutted Defendants' evidence that his initial grievance was returned to him by Norfleet to be resubmitted but that he failed to take any action to resubmit his grievance.

Additionally, it is apparent that Plaintiff's complaint, which was signed by him on February 4, 2019, was filed so quickly after the events at issue on January 24, 2019, that there was barely enough time for even the first level of the grievance process to be completed, let alone time for the entire three level process to be completed. Even if the Court accepts as true that Plaintiff filed a grievance on January 27, 2019, as he asserts, the seven-day response time provided for by

9

TDOC Policy #501.01(VI)(C)(1) would have only expired on February 2, 2019, and the second and third levels of the grievance process could not have been pursued and completed prior to the filing of the instant complaint. TDOC Policy #501.01(VI)(C)(2) and (3) provides for a maximum time period of approximately 57 days for the second and third level of the grievance process to be completed. *See* Docket Entry No. 17-1 at 6-7.

Further, even if the Court accepts as true Plaintiff's allegation that Norfleet and other prison officials told him that they would not process his grievance, the TDOC grievance policy specifically provides inmates with an available avenue to continue the grievance process even if they are not provided with a timely response. *See* TDOC Policy #501.01(D) ("if a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response."). Thus, when Plaintiff did not receive a response to his initial grievance, he still had a remedy under the TDOC grievance policy to advance the grievance to the Level II stage and again to the Level III stage.[5] His failure to pursue this remedy forecloses any argument that prison officials' failure to respond to his grievance rendered the grievance process unavailable. *See Belser v. Woods*, 2018 WL 6167330 at *2 (6th Cir. July 6, 2018) (holding that inmate's allegation that grievance coordinator would not respond to his appeals was insufficient to render grievance process unavailable where regulation permitted inmate to proceed to the next step when no timely response to grievance was given); *Pool v. Klenz*, 2018 WL 1989637 at *3 (6th Cir. Jan. 17, 2018) (prison

---

[5] The Court notes that the grievance history for Plaintiff that is attached to Coatney's Affidavit shows that Plaintiff was familiar with the second and third levels of the grievance process, having filed six grievances that were resolved at the second and third levels. *See* Docket Entry No. 17-1 at 4.

inmate who alleged that prison official did not respond to his grievance filings failed to demonstrate that the grievance process was not available because the applicable grievance procedure provided for steps the inmate should have taken in the absence of a response that would have allowed him to continue the process).[6]

In the end, Plaintiff has not produced competent evidence that meets his burden of rebutting the PLRA exhaustion defense raised by Defendants. Accordingly, Plaintiff's lawsuit should be dismissed because of his failure to comply with the mandatory exhaustion requirement of the PLRA.

## RECOMMENDATION

Based on the forgoing, the undersigned respectfully RECOMMENDS that the motion for summary judgment filed by Defendants Jason Clendenion, Candace Hammond, and Brandon Peone (Docket Entry No. 16) be GRANTED and that this lawsuit be DISMISSED.[7]

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within

---

[6] Plaintiff's ability to continue to proceed through the second and third levels of the grievance policy even when prison officials did not provide him with a timely grievance response distinguishes this case from *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004). In *Boyd*, the Sixth Circuit found that an inmate satisfied the exhaustion requirement under the PLRA because prison officials had not timely responded to his grievance. However, the inmate in *Boyd* did not have the ability to pursue an administrative grievance appeal under the applicable grievance process until he received a response to his initial grievance. 380 F.3d at 996.

[7] Although Defendant Rumbaugh is not a part of the motion to dismiss, dismissal for failure to comply with the PLRA's exhaustion requirement applies to all claims in the case.

the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge